USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/25/25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KIMBERLY CORLESS and JASON GOLDSTEIN, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>FARMER JON'S POPCORN, LLC,<br><br>        Defendant. | CASE NO. 1:25-cv-03304-VM |

**STIPULATED ORDER FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION**

**1.  PURPOSE**

This Stipulated Order ("Protocol" or "Order") will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules, and shall be subject to the Protective Order entered by the Court in this Action (the "Protective Order"). As used herein, "Requesting Party" means the Party requesting production of documents and "Producing Party" means the Party that may be producing documents in response to the request of the Requesting Party. As used herein, the words "Party" or "Parties" (whether capitalized or not) include the Requesting Party and the Producing Party.

**2.  THIRD-PARTY SUBPOENAS**

A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Protocol with the subpoena and state that the Parties to the Action have requested that third parties produce documents in accordance with the specifications set forth herein. The Issuing Party shall timely notify other Parties when it receives non-Party productions, and shall, upon request by other Parties ("Requesting Parties" for purposes of this paragraph), provide copies of such productions to Requesting Parties in the format in which they were received from the third party. In the event that the format of a third-party production does not conform with the specifications set forth herein, the Parties and third parties may meet and confer regarding the format of production. Nothing in this Protocol is intended to or should be interpreted as narrowing, expanding or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

**3.  COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this District's Local Rules.

**4.     ESI LIAISON**

The Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without Court intervention.

**5.     PRESERVATION**

The Parties agree to take reasonable steps to preserve potentially relevant ESI that may exist, in accordance with their obligations under applicable law. Either Party may request a meet and confer to confirm, at a high level, that all Parties continue to abide by their preservation obligations.

**6.     SEARCH**

The Parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery. The Parties shall meet and confer in good faith and with the goal of achieving a just, speedy and cost-efficient methodology or workflow for identifying responsive documents to be produced. For example, the Parties may choose to proceed by proposing search terms, custodians and date ranges that are reasonably tailored to particular issues in the matter combined with or by employing other methods to cull data and identify potentially responsive documents for review and production, including the use of technological solutions.

To filter ESI for relevancy prior to review and production, a Producing Party may do one or more of the following, so long as the process used meets the standard of care promulgated in Fed. R. Civ. P. 26(g): (i) use keyword search terms agreed to by the Parties that the Producing Party in good faith believes will capture responsive ESI; (ii) limit the collection and review of ESI to the custodians agreed to by the Parties; (iii) limit the collection and review of ESI to a reasonable date range agreed to by the Parties and based on the claims asserted; and/or (iv) use technology-assisted review techniques.

**7.     PRODUCTION FORMATS**

   a)   The Parties agree to produce documents in PDF, XTIFF, Xnative and/or paper file formats or a combination thereof. If particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties agree not to degrade the searchability of documents as part of the document production process.

   b)   All documents (electronic or otherwise) shall be produced as kept and maintained by the Producing Party in the ordinary course of business.

c) Parent-child relationships (the association between emails and attachments) will be preserved. Email attachments will be consecutively produced with the parent email record. For example, if a Party produces an email with its attachments, such attachments shall be produced behind the email in the order in which they were attached. For purposes of this Protocol, attachment means either a physical file that is embedded into and/or sent with an email or another electronic message or file or files sent via hyperlinks in the possession, custody or control of the producing party. For example, files attached via the "Share link" option in M365 will be treated the same as if they were attached as a copy.

d) The Parties will produce documents originating from hard copy sources ("Hard Copy Documents") in Group IV single-page TIFF format (black and white, 300 dpi) with corresponding searchable document-level OCR text files. The Parties will also provide Concordance-compatible image and data load files (*i.e.*, .OPT and .DAT files) using standard Concordance delimiters, and with a Bates number field included in the load file to match the text files and fielded data with produced TIFF images. With respect to Hard Copy Documents, the load file will include at least the following fields: (1) BegBates; (2) EndBates; (3) BegAttach; (4) EndAttach; (5) Custodian or Source; (6) DocType [Paper]; (7) Confidentiality Designation; (8) Page Count; (9) Redaction (Y/N); and (10) Text File Path. Bates numbers, confidentiality designations and redactions (if any) shall be burned into the TIFF image files. TIFF image files shall be provided in a folder on the production deliverable named "Images."

e) Except as otherwise stated herein, the Parties will produce documents originating as ESI, or kept as such in the ordinary course, in Group IV single-page TIFF format (black and white, 300 dpi) with document-level extracted text files. TIFF images shall be processed and produced in a manner that maintains and displays (*i.e.*, shall force on) all hidden columns or rows, hidden text or worksheets, speaker or presenter notes and tracked changes and comments (maintained as last saved.) Where a document produced in image format contains color, and that color is crucial for understanding of the document, such images will be produced in color, without the need for a specific request by the receiving Party, by default. The Parties will also provide Concordance-compatible image and data load files (*i.e.*, .OPT and .DAT files) using standard Concordance delimiters, and with a Bates number field included in the load file to match the text files and fielded data with produced TIFF images. Bates numbers, confidentiality designations, and redactions (if any) shall be burned into the TIFF image files. TIFF image files shall be provided in a folder on the production deliverable named "Images." With respect to ESI, the load file will include at least the following fields:

| Field Name | Description of Field |
|---|---|
| BegBates | Beginning document number |
| EndBates | Ending document number |
| BegAttach | Beginning document number of family unit |
| EndAttach | Ending document number of family unit |
| Custodian or Source | All production custodians (including custodians for deduplicated records) associated with the produced document; multiple custodians in the "Custodian" field shall be separated by a semicolon |
| Attachment Count | Number of attachments, same as Family Count |
| Author | Author field extracted from the metadata of the native file |
| From | Sender of the email message |
| Recipient(s) | Recipient(s) of the email message (To) |
| CC | Recipient(s) of "carbon copies" of the email message |
| BCC | Recipient(s) of "blind carbon copies" of the email message |
| Subject | Subject field extracted from the metadata of the native file |
| Sent Date/Time | Date and time the email message was sent (produced in "MM/DD/YYYY HH:MM AM or PM" format) |
| File Extension | File extension of document (.msg, .doc, .xls, etc.) |
| File Name | Name of original file |
| Title | Title of a non-email document (Microsoft Title field) |
| Hash Value | MD5 or SHA-1 Hash Value, unique document identifier |
| Nativelink Path | Relative file path to each native file on production media |
| Text File Path | The path to the corresponding OCR or extracted text file included with a production volume |
| Create Date/Time | For non-emails (produced in "MM/DD/YYYY HH:MM AM or PM" format) |

| Confidentiality Designation | "Confidential," or "Null" |
|---|---|
| Page Count | For documents produced in TIFF form, number of pages in the document; for documents produced in native, page count will be 1 (for placeholder). |
| Redacted | Descriptor for documents that have been redacted (<yes> or <no>) |
| FilePath | Full path to source files (if e-docs or loose e-mail) or folder path contained with a mail store (if NSF or PST). (including filepaths for deduplicated records) associated with the produced document; multiple filepaths in the "FilePath" field shall be separated by a semicolon. |
| FileSize | Size of the file in bytes |
| Importance | Importance field extracted from an e-mail message. (Low, Normal or High) |
| ProductionVolume | Unique identifier for the production in which the document is contained |
| ConversationIndex | E-mail thread identification. |
| DocType | Descriptor of the type of document: "**E-document**" for electronic documents not attached to emails; "**Emails**" for all emails; "**E-attachments**" for files that are attachments to emails; and "**Paper**" for hard copy physical documents that have been scanned and converted to an electronic image. |
| HiddenText | Document has hidden text (Y/N) |
| SuspectOLE | Document contains embedded files. (Y/N) |
| HasComments | Microsoft Word, Excel or PowerPoint document contains comments |
| HasTrackChanges | Microsoft Word or Excel document contains tracked changes |
| DateStarted | Start date and time ("MM/DD/YYYY HH:MM AM or PM") for calendar appointments |

f) The Parties may redact: (1) information that is privileged or protected from discovery as work product or by reason of any other applicable privilege or immunity; (2) information subject to nondisclosure obligations imposed by governmental authorities, law or regulation (*e.g.*, protected personal information); and (3) sensitive and nonrelevant information (including, but not limited to, personally identifiable information, trade secrets or information regarding products, data or people) that is found within documents that contain relevant information.

g) Absent special circumstances, non-redacted Excel files, .CSV files, other similar spreadsheet files and audio/video files shall be produced in native format ("Native Files"). PowerPoint (or other presentation formats) will be produced in native format. Native PowerPoint presentations that require redactions shall be produced as TIFF images, which shall include speaker notes and "hidden" slides as extracted by the software used to process the documents. Color PowerPoint presentations requiring redactions shall be converted to color images, and black and white PowerPoint presentations requiring redactions shall be converted to black and white TIFF images, provided that proper grayscale printing is enabled to ensure that any dark colored text is not hidden by dark objects/drawings around the text. If the PowerPoint or slide program contains video or audio components, the video or audio will be produced as native files with the appropriate attachment relationships. Native Files should be provided in a self-identified "Natives" directory. Each Native File should be produced with a corresponding single-page TIFF placeholder image, which will contain language indicating that the document is being produced as a Native File. Native Files should be named with the beginning Bates number that is assigned to that specific record in the production. A "NativeLink" entry for each spreadsheet should be included in the .DAT load file indicating the relative file path to each native file on the production media. Native Files should be produced with extracted text and applicable metadata fields. For documents that require redactions, the Parties will apply the redactions directly on the native file.

h) To the extent a document is redacted and produced in native or TIFF form, the OCR or extracted text files for such document shall not contain the text for underlying redacted portions.

i) The Parties may withhold documents from production by designating the documents privileged pursuant to a claim of attorney-client privilege, work-product protection or other applicable privilege or immunity in accordance with the Court's discovery rules and the Parties' Protective Order.

j) The Parties will perform deduplication of ESI within and across custodians (*i.e.*, global deduplication) according to MD5 or SHA-1 hash values and will produce only a single copy of identical ESI. Entire document families may constitute duplicate ESI. Deduplication shall not break up document families. All custodians of a deduplicated document must be identified in the "Custodians" metadata field specified above. An overlay data file may be produced at reasonable intervals upon request to account for updated duplicate custodian information in the Custodian field along with the filepath(s) of the duplicate files.

k)     A Producing Party may also deduplicate emails in such a way as to eliminate earlier or incomplete chains of emails, and produce only the most complete iteration of an email chain ("email thread suppression"). If a Producing Party elects to utilize such email thread suppression for its productions, it shall use commercially acceptable e-discovery software to do so (*e.g.*, Relativity Analytics, Brainspace, etc.) and inform the Receiving Party of such use. Under no circumstances will email thread suppression eliminate (a) the ability of a requesting Party to identify every custodian who had a copy of a produced document or email, or (b) remove from a production any unique branches and/or attachments contained within an email thread.

l)     The Parties shall assign a Bates number to individual pages of TIFF documents (or PDF documents) and a Bates number to each document produced in native format. Bates numbers shall be unique across the entire document production and sequential within a given document.

m)     Text Messages, Mobile Application data, Collaboration software programs: The parties will meet and confer to discuss the format of production of text messages. The parties recognize that there is a wide variety of capabilities available, and it is difficult to assert a standard into a protocol without information as to each Party's capabilities.

n)     If the forms of production allowed by this Protocol present an undue burden or cost for a Producing Party, the Parties shall meet and confer to try to agree on a reasonable, alternative form of production. Nothing in this Protocol prohibits a Party from seeking relief from this Protocol pursuant to the applicable discovery rule(s) of this Court.

o)     Each Party will bear the costs to process and review its own documents according to this Protocol. Notwithstanding this paragraph, nothing in this Protocol limits or prohibits a prevailing Party from seeking recovery of all allowable fees and costs, including attorney fees and costs, as may be permitted under applicable law and as provided by this Court's rules regarding costs and attorneys' fees.

p)     To the extent responding to a discovery request requires production of ESI contained in a database, the Producing Party may comply with the discovery request by querying the database and generating a report ("Structured Data Report") in a reasonably usable and exportable electronic format (for example, in Excel or .CSV format). To the extent available and reasonably accessible, the first line in the Structured Data Report will show the column headers for each field of data included in the Structured Data Report. The Parties shall meet and confer to address the production and production format of any responsive data contained in a database or other structured data source.

q)     When processing ESI, Coordinated Universal Time (UTC) should be selected as the time zone.

r)  Embedded Objects: Microsoft Excel (.xls) spreadsheets embedded in Microsoft Word documents will be extracted as separate documents and treated like attachments to the document. The Parties agree that other embedded objects, including, but not limited to, logos, icons, emoticons and footers, may be culled from a document set and need not be produced as separate documents by a producing Party (*e.g.*, such embedded objects will be produced within the document itself, rather than as separate attachments).

s)  Compressed Files: Compression file types (*i.e.*, .CAB, .GZ, .TAR, .Z and .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

t)  Password-Protected, Encrypted or Proprietary-Software Files: With respect to any ESI items that are password-protected or encrypted, the producing Party will take reasonable steps based on industry standards to break the protection so that the documents can be reviewed and produced if appropriate. In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to a document request, remain for a particular custodian after such reasonable efforts have been made, the producing Party shall advise the requesting Party. ESI that cannot be reviewed because proprietary software is necessary to view the ESI will be disclosed to a requesting Party, and the Parties shall meet and confer regarding the next steps, if any, with respect to such ESI.

u)  De-NISTing System Files. ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing.

v)  The Parties share a desire to ensure that ESI is produced in a reasonably useable format. The Parties recognize that certain, limited ESI may not be amenable to the proposed technical specifications. The Parties may meet and confer in good faith to reach agreement regarding these issues and the appropriate form of production and will seek Court intervention if necessary.

**8. PHASING**

When a Party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the Parties agree to phase the production of ESI, and the initial production may be negotiated by the Parties during the meet and confer process. Following the initial production, the Parties will continue to prioritize the order of subsequent rolling productions to the extent reasonable. In the event of any subsequent conflict of law, the law that is most protective of privilege and work product shall apply.

**9. DOCUMENTS PROTECTED FROM DISCOVERY**

a)  Pursuant to Fed. R. Evid. 502(d), which is enforceable and granted full faith and credit in all other state and federal proceedings by 28 U.S.C. § 1738, the production of a privileged or work-product-protected document, whether inadvertent or

-8-

       otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a production is not itself a waiver in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Fed. R. Evid. 502, including specifically 502(d) and other applicable laws and regulations.

b) Within 60 days from the final rolling document production, the Producing Party will produce a privilege log in Microsoft Excel format indicating the categories of documents withheld from production and the basis for the claim of privilege. Inadvertent failure to log privileged documents or metadata will not result in the waiver of privilege, provided that upon discovering the inadvertent omission, the Producing Party sends to the Requesting Party an addendum to the appropriate privilege log explaining the reason for the omission and providing the required privilege log entries for the document(s).

c) Before producing their privilege logs, the Parties may meet and confer to discuss whether the cost benefits of categorical or metadata privilege logs and other tools/workflows to streamline and reduce burden associated with the privilege log process may be appropriate for all or a subset of documents, while still supplying sufficient information regarding the privilege assertion and, if so, what information a categorical privilege or metadata log would contain. When using a traditional privilege log, the Parties will state the following information separately for each document or portion of a document withheld:

- A sequential number associated with each privilege log record (*i.e.*, a privilege log ID number);

- The Bates number range of the document and family information, if applicable (*e.g.*, in situations where a partial family was withheld);

- The specific privilege, protection or immunity claimed;

- The date of the document (as available/extracted from metadata);

- The author of the document (as available/extracted from document metadata);

- All recipients of the document (including cc's and bcc's) (as available/extracted from document metadata);

- The custodian(s) of the document;

- The subject matter of the document / brief description of the document; and

- A legend or other means of designating attorneys identified on the log.

d)      The Parties may meet and confer in good faith regarding any additional substantive and formatting requirements for privilege logs. If a claim of privilege applies to only a portion of a document, the document should be produced, and the portion claimed to be privileged obscured and stamped "redacted." Additionally, the Parties may meet and confer regarding whether any redacted documents need to be listed on a traditional privilege log (as set forth above), but, at a minimum, the Producing Party shall supply a list of all redacted documents.

e)      The following documents presumptively need not be included on a privilege log:

- Communications involving trial counsel that post-date the filing of the complaint;

- Work product created by outside counsel or, where applicable, by an agent of outside counsel (other than a Party) that constitutes legal advice to the Producing Party and that has not been shared with third parties (apart from other agents assisting in the preparation of that advice); and

- Documents not responsive to the Requesting Party's substantive document requests.

f)      If the Receiving Party has reason to believe that a produced document or other information may reasonably be subject to a claim of privilege, then the Receiving Party shall immediately sequester the document or information, cease using the document or information and cease using any work product containing the information and inform the Producing Party of the beginning Bates number of the document or, if no Bates number is available, otherwise inform the Producing Party of the information. The Producing Party will promptly notify the Receiving Party whether it intends to claw back the document in question or not.

g)      A Producing Party must give written notice (a "clawback request") to any Receiving Party asserting a claim of privilege, work-product protection or other ground for reclaiming documents or information ("Privileged Material"). After a clawback request is received, the Receiving Party shall immediately sequester (if not already sequestered) and destroy or return the Privileged Material (including copies distributed to others, such as outside consultants and professional vendors), and shall expunge the Privileged Material from any derivative documents (including deposition testimony), systems, document review databases, e-rooms or other storage locations. The Receiving Party shall not review or use Privileged Material, or any work product containing information taken from Privileged Material, for any purpose. Any Producing Party that claws back Privileged Material will provide the Receiving Party with a privilege log that identifies the basis for the assertion of privilege or protection over the clawed-back documents. If there is a dispute about the privileged nature of clawed-back documents, the Parties shall undertake reasonable efforts to resolve the dispute without court intervention. To the extent the Parties cannot resolve the dispute, the Receiving Party may bring a motion to compel production of the Privileged Documents, which shall be filed

under seal, but may not assert as a ground for compelling production the fact or circumstance that the Privileged Material was produced. The Receiving Party may make no use of the Privileged Material during any aspect of this matter or any other matter, including in depositions or at trial, unless the documents are found by a court to be not privileged or protected.

h) It is understood and agreed among the Parties that, to the extent any ESI discoverable in this action is subject to the regulation or protection of the European Union's General Data Protection Regulation ("GDRP") (or other applicable data privacy law, statute, or directive), any preservation, access, review and/or production of such ESI shall be done in compliance with the GDRP (or other applicable data privacy law, statute or directive).

i) The Parties shall not be obligated to include in their searches for potentially responsive materials documents and information from sources that are not reasonably accessible without undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B).

## 10. MISCELLANEOUS PROVISIONS

a) Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or other information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production. Simply because a document hits upon a search term or is otherwise identified by technological tools as likely responsive does not mean that the document is in fact responsive, and the Parties may conduct further review and/or analysis to determine responsiveness and privilege.

b) Nothing in this Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine or any other applicable privilege or immunity.

c) The Parties do not waive any objections as to the production, discoverability, admissibility or confidentiality of any information or documents.

d) The Parties shall make good-faith efforts to comply with and resolve any differences concerning compliance with this Order. No Party may seek relief from the Court concerning compliance with the Order unless it has conferred with other affected Parties.

e) If audio, video, instant messages or other specialized sources not discussed herein contain responsive information, the Parties should meet and confer to determine a mutually agreeable means for the search and production of such media.

f) Nothing in this Protocol shall be construed to affect, modify or amend the Protective Order filed with and entered by the Court in this action. All productions are subject to the Protective Order entered by the Court in this Action.

**11.     MODIFICATION**

Nothing in this Order waives the right of any Party to petition the Court for an Order modifying its terms upon good cause shown, provided, however, that counsel for such Party must first meet and confer with counsel for the opposing Party, and the Parties shall use reasonable best efforts to negotiate an exception from or modification to this Order prior to seeking relief from the Court.

SO STIPULATED, through Counsel of Record.

Dated: July 23, 2025                                  Respectfully submitted,

**PEARSON WARSHAW LLP**

By: */s/ Melissa M. Weiner*
Melissa S. Weiner
Ryan T. Gott*
328 Barry Avenue S, Suite 200
Wayzata, MN 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
mweiner@pwfirm.com
rgott@pwfirm.com

**KALIELGOLD PLLC**
Sarah M. Levin (NY License No. 5762745)
Jeffrey D. Kaliel*
1100 15th Street, NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
slevine@kalielgold.com
jkaliel@kalielpllc.com

Sophia G. Gold
490 43rd Street, No. 122
Oakland, CA 94609
Telephone: (202) 350-4783
sgold@kalielgold.com

*Pro Hac Vice Application Forthcoming

*Counsel for Plaintiff and the Class*

Dated: July 23, 2025                                **PHETERSON SPATORICO LLP**

By:*/s/ Steven A. Lucia*
    Steven A. Lucia (SL-0459)
    Culver Road Armory
    145 Culver Road, Suite 100
    Rochester, NY 14620
    Telephone: (585) 546-5600
    Facsimile: (585) 730-8360
    steven.lucia@psnlawgroup.com

*Counsel for Defendant*



SO ORDERED.
25 July 2025
DATE
VICTOR MARRERO, U.S.D.J.

-13-