

**KalielGold**

1100 15th Street, NW | 4th Floor
Washington, DC 20005

202.350.4783
www.kalielgold.com

490 43rd Street | No. 122
Oakland, CA 94609

October 24, 2025

<u>Via ECF</u>

Hon. Victor Marrero
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007

     RE:  Corless v. Farmer Jon's Popcorn, LLC; No.: 1:25-cv-03304-VM

Dear Judge Marrero:

  Pursuant to the Court's Individual Practices, Plaintiffs Kimberly Corless and Jason Goldstein submit this letter in opposition to Defendant's proposed motion to dismiss Plaintiffs' claims under sections 349 and 350 of the New York General Business Law ("GBL") as a matter of law pursuant to Federal Rule 12(c). Plaintiffs' GBL claims are plausibly alleged and, due to the fact-intensive inquiry required under the GBL, cannot be resolved at the pleading stage.

  As an initial matter, Plaintiffs' GBL claims are sufficiently pleaded. Plaintiffs allege that Defendant markets its popcorn products with a prominent word on the front label, presented in bold-faced type: "BUTTER." Compl. ¶ 30. It is thus natural that a customer encountering the products reasonably expects them to contain butter. *Id.* ¶ 2. That understanding is supported by "butter" having its own statutory definition. *Id.* ¶ 38 (quoting 21 U.S.C. § 321a ("'[B]utter' shall be understood to mean the food product usually known as butter, and which is made exclusively from milk or cream, or both. . . .")). But, as the fine print on the back label reveals, Defendant's popcorn contains no butter. *Id.* ¶¶ 2-3. Had Defendant's customers known this, they would have declined to purchase Defendant's products or would have paid less for them. *Id.* ¶¶ 17, 24, 51.

  These facts support a plausible GBL violation at the pleading stage, where Plaintiffs need only allege that Defendant's popcorn label "was 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)). Although this analysis considers Defendant's product packaging as a whole, Defendant's use of disclaimers or qualifying language is not dispositive. *See id.* This is because a merchant cannot "say one thing to a consumer on the front while crossing [its] fingers behind [its] back (label)." *Strow v. B&G Foods, Inc.*, 633 F. Supp. 3d 1090, 1102 (N.D. Ill. 2022) (citing *Mantikas*, 910 F.3d at 638-39).

  Assessing whether a defendant's label is deceptive to a reasonable consumer is a fact-intensive question not amenable to judgment as a matter of law. *See Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016) (declining to resolve as a matter of law whether

◎KalielGold

October 24, 2025
Page 2

defendant's shampoo was "all natural"). Accordingly, courts grant judgment on the pleadings only in "exception[al]" GBL cases where a plaintiff's allegations "border on fantasy" or are "patently implausible." *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 95 (S.D.N.Y. 2021) (collecting cases). Because the Complaint plausibly alleges the confusion Defendant's labeling inflicts on reasonable consumers, such is not the case here.

Additionally, Defendant's contention that any "[a]mbiguities" in its labeling can be resolved as a matter of law by consulting its product's ingredient list is inaccurate. As the Second Circuit has explicitly held, "the misleading quality of [a defendant's] message is not effectively cured by [including] small print on an ingredients list on the side of the package." *Mantikas*, 910 F.3d at 639. That is because "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box." *Id.* at 637; *accord Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.")

The Northern District of Illinois reached the same conclusion in *Strow*, a case remarkably similar to this one. There, the defendant's cooking spray contained no butter but was branded a "Butter No-Stick Spray" on its front label in large typeface. *Strow*, 633 F. Supp. 3d at 1095. Noting that the defendant's back-label ingredient list could not "exonerate [its] front-label deceptions as a matter of law," the court sustained the plaintiff's deceptive-advertising claims. *Id.* at 1102-03.

As these cases make clear, Plaintiffs cannot be expected to identify and investigate for themselves the false impression created by Defendant's front label.

Defendant's bald assertion that its front label "merely references the product's flavor," not its contents, is equally unavailing. There is no indication anywhere on Defendant's packaging that the word "butter" is used as a flavor descriptor. Compl. ¶ 30; *see also* 21 CFR 101.22(i)(2) ("If the food contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name(s) of the characterizing flavor, in letters not less than one-half the height of the letters used in the name of the food and the name of the characterizing flavor shall be accompanied by the word(s) "artificial" or "artificially flavored", in letters not less than one-half the height of the letters in the name of the characterizing flavor, *e.g.*, "artificial vanilla", "artificially flavored strawberry", or "grape artificially flavored""); Food and Drug Administration CPG Sec 505.200 "Butter" Featured in Product Name ("The [FDA] will consider a name "Butter _____ " or the use of the word butter in conjunction with the name as false and misleading unless all of the shortening ingredient is butter. If the product contains both butter and shortening but a sufficient amount of butter to give a characteristic butter flavor to the product, an appropriate name would be "butter flavored _____." However, if the product contains any artificial butter flavor it would have to be labeled in compliance with 21 CFR 101.22(i)(2)."). More importantly, the issue of whether "butter" denotes ingredients or flavor in this case is yet another issue incapable of resolution on the pleadings.

At bottom, Defendant bases its proposed motion on the premise that its interpretation of its label is dispositive. But it's the *reasonable consumer's* understanding that matters here, not Defendant's, and the views of Defendant's consumer base cannot be divined at the pleading stage. As the First Circuit recognized in a case involving a coffee manufacturer's labeling practices:

> One might presume that a reasonable consumer … would check the list of ingredients. On the other hand, perhaps a reasonable consumer would find in the product name sufficient assurance so as to see no need to search the fine print on the back of the package, much like one might easily buy a hazelnut cake without studying the ingredients list to confirm that the cake actually contains some hazelnut.
> 
> …
> 
> [W]e think it best that six jurors, rather than three judges, decide on a full record whether the challenged label "has the capacity to mislead" reasonably acting … consumers.

*Dumont v. Reily Foods Co.*, 934 F.3d 35, 40-41 (1st Cir. 2019).

Here, as in *Dumont*, the reasonable consumer's interpretation of Defendant's messaging cannot be decided as a matter of law. Whether Defendant's front label refers to ingredients or mere flavoring, and whether it is deceptive to reasonable consumers when considered in tandem with the product's ingredient list, must be decided based on "extrinsic evidence," including, but not limited to, customer surveys and expert testimony regarding consumer expectations. *See Price v. L'Oreal USA, Inc.*, 2020 WL 4937464, at *10 (S.D.N.Y. Aug. 24, 2020). Defendant's own opinions on these issues are irrelevant. *See Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 872 (E.D.N.Y. 2018) (noting that a party's "own conclusory allegations" and anecdotes are irrelevant to determining the understanding of "a broad cross-section of reasonable consumers").

Because Plaintiffs' GBL claims are plausibly alleged and cannot be adjudicated without a full factual record, the Court should deny Defendant's request for judgment on the pleadings.

Respectfully,

KALIELGOLD PLLC

*Sophia Goren Gold*

Sophia G. Gold
sgold@kalielgold.com